UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MAXINE TAYLOR, *individually and as executrix of the estate of Margaret M. Pichey*,

        Plaintiff,

    v.

PRINCIPAL LIFE INSURANCE COMPANY and KEYBANK NATIONAL ASSOCIATION,

        Defendants.
_____

21-CV-314-LJV
DECISION & ORDER

On October 7, 2020, the plaintiff, Maxine Taylor, commenced this action in the Supreme Court of the State of New York, County of Niagara. Docket Item 1-1. With the consent of defendant Principal Life Insurance Company ("Principal"), defendant KeyBank National Association ("KeyBank") removed the action to this Court. Docket Item 1. A short time later, Taylor filed an amended complaint. Docket Item 10.

Principal and KeyBank both moved to dismiss, Docket Items 12 and 15, and both motions were fully briefed, Docket Items 17, 21, and 22. This Court then issued a written decision ordering that the motions to dismiss would be granted unless Taylor amended her complaint within sixty days to address deficiencies noted in the decision. Docket Item 24. Taylor timely filed a second amended complaint. Docket Item 25.

Principal and KeyBank again moved to dismiss, arguing that Taylor still failed to state a claim upon which relief can be granted. Docket Items 26 and 27. After Taylor

did not respond to the motions to dismiss by the deadline set in Local Rule 7(b)(2)(B), this Court issued a text order:

> On 5/5/2022, defendant KeyBank National Association moved to dismiss the second amended complaint. Docket Item 26. On 5/6/2022, defendant Principal Securities, Inc., also moved to dismiss the second amended complaint. Docket Item 27. The plaintiff has not responded to those motions, and the time to do so has passed. *See* W.D.N.Y. Local Rule 7(b)(2)(B). The plaintiff therefore shall show cause, by 9/2/2022, why this Court should not decide the motions to dismiss based only on the defendants' submission. SO ORDERED. Signed by Hon. Lawrence J. Vilardo on 8/2/2022.

Docket Item 28. Taylor has not responded to that order, and the time to respond has long passed. The Court therefore decides the motions to dismiss based only on the defendants' submissions.[1]

For the following reasons, Principal's and KeyBank's motions to dismiss are granted.

## FACTUAL ALLEGATIONS

On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trustees of the Upstate New York Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)). The Court also may consider any "documents . . . [that the] plaintiff[] . . .

---

[1] Taylor's failure to respond to the motions to dismiss and to this Court's order to show cause may well be tantamount to a failure to prosecute her claim, making the complaint vulnerable to a motion to dismiss under Federal Rule of Civil Procedure 41(b). But the defendants have not made such a motion, and, in any event, this Court dismisses on other grounds.

relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sun Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).  The second amended complaint refers to three documents that defendant Principal attached to its submissions: Pichey's application for an annuity, Docket Item 27-1 at 23-28; a change of beneficiary form dated November 4, 2019, *id.* at 72-75; and a letter from Principal to Pichey dated November 13, 2019, *id.* at 81-83.[2]  In light of this standard and these documents, the second amended complaint tells the following story.

Pichey, through the services of Principal's agent, KeyBank, purchased an annuity from Principal.  Docket Item 25 at ¶ 15; *see* Docket Item 27-1 at 23-28 (annuity application).  The annuity provided that on Pichey's death, Principal would pay the proceeds of the annuity to the designated beneficiary.  Docket Item 25 at ¶ 15.  Initially, Pichey named her brother as the designated beneficiary and her nephew as the contingent beneficiary.  Docket Item 27-1 at 23.  Several years later, Pichey changed the beneficiary to only her nephew.  *Id*. at 55-56.

In November 2019, Pichey's health was rapidly declining, and she sought again to change the designated beneficiary.  Docket Item 25 at ¶ 19.  So on November 4, 2019, Pichey visited a KeyBank branch in Lockport, New York, to make Taylor the designated beneficiary on the annuity "in exchange for her services during her cancer and end-of-life treatment."  *Id.* at ¶¶ 19, 22-23.

---

[2] Taylor attached two of these documents—the change of beneficiary form and the letter—to the original complaint, *see* Docket Item 1-1 at 10-14, but she did not attach them to the amended complaint or the second amended complaint, *see* Docket Items 10 and 25.

At the Lockport KeyBank, Pichey met with Michelle Hamilton, an employee of KeyBank, and told Hamilton that she wanted to make Taylor the designated beneficiary of the annuity. *Id.* at ¶ 23. Hamilton provided Pichey with a form to sign and said that the form would make Taylor the beneficiary. *Id.* at ¶ 24. Pichey signed the form and left the Lockport KeyBank believing she made Taylor the beneficiary of the annuity. *Id.* at ¶ 25.

The form was filled out as follows: the contract number for the annuity, 8822294, was listed as the "[p]olicy [n]umber"; Pichey was listed as "the [i]nsured" whose life was covered; and Taylor was listed as the primary beneficiary. Docket Item 27-1 at 72-75. In addition, under the heading "[i]mportant information about changing your policy beneficiary," the form noted that it "must be completed, signed, received in, and approved by [Principal's] office to effect a change of your policy[] beneficiary." *Id.* at 72 (bold emphasis omitted).

As it turned out, that was the wrong form.[3] Docket Item 25 at ¶ 30. On November 13, 2019, Principal sent Pichey a letter acknowledging that it received her request to change the beneficiary designation on her annuity. *Id.*; *see* Docket Item 27-1 at 81-83. In that letter, Principal also explained that to make the proposed changes to the beneficiary, Pichey needed to complete a different form. *Id*. Pichey never completed the correct form, however, and on December 2, 2019, she passed away. Docket Item 25 at ¶¶ 31, 33.

---

[3] As Principal notes in its motion papers, the form that Pichey completed was a change of beneficiary form for life insurance, not for an annuity. Docket Item 27-1 at ¶ 25. That is why the form asked for the name of an "insured" whose life was covered and a "policy number," *id.* at ¶ 26, neither of which pertain to an annuity contract.

After Pichey's death, Kevin Mashburn, a representative of either KeyBank or Principal, contacted Taylor to discuss financial planning. *Id.* at ¶ 35. At that time, Mashburn "mentioned the error" of Pichey's signing the incorrect form to change the beneficiary on the annuity and advised that the error would be corrected. *Id.* But during a subsequent meeting, Mashburn said the opposite: that Principal would not honor the form signed by Pichey and would not pay Taylor the proceeds of the annuity. *Id.* at ¶ 36.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## **DISCUSSION**

### I.  PRINCIPAL

Principal argues that Taylor's breach of contract claims must be dismissed for two reasons. First, Principal argues that Taylor was never correctly named as the beneficiary and that strict compliance with its procedures is required to change a beneficiary. Docket Item 27-2 at 22-24. Second, it argues the complaint fails to join a

5

necessary party—John Thomas Macaluso, Pichey's nephew, who is the properly designated beneficiary and who actually received the annuity funds.  Docket Item 27-2 at 36-39.

### A. Change in Beneficiary

To effect a change of beneficiary under New York law,[4] "the method prescribed by the insurance contract must be followed."  *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 440, 704 N.E.2d 557, 560 (1998).  When an insurer brings an action in interpleader, however, it "waives strict compliance with the policy provisions."  *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d 355, 365 (S.D.N.Y. 2008) (citing *Lopez v. Massachusetts Mut. Life Ins. Co.*, 170 A.D.2d 583, 584, 566 N.Y.S.2d 359, 360 (2d Dep't 1991)).  So in an interpleader action—that is, when the insurer has deposited the policy proceeds into court—substantial compliance applies.  *Id.*

But this action is not an interpleader initiated by Principal.[5]  Principal therefore has not waived strict compliance with the annuity provisions.  Indeed, Taylor seemed to acknowledge that in her response to the first motion to dismiss.  Docket Item 17 at 6-9.

---

[4] In a diversity case such as this, the Court applies the choice of law rules of the forum state—here, New York State.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach.  *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997).  Among other factors, courts may consider the place of contracting, the place of negotiation, and the domicile of the contracting parties.  *See id.*  Here, New York was the place of contracting and negotiation, and Pichey was domiciled in New York—suggesting that New York law applies.  Moreover, the parties rely on New York law in their briefs, *see* Docket Items 26 and 27, and there has never been a dispute that New York law applies in this action.

[5] In fact, Principal says that the annuity has been distributed to Pichey's properly designated beneficiary—John Thomas Macaluso, Pichey's nephew.  Docket Item 27-1 at 11 (¶ 51); Docket Item 27-1 at 124-125 (October 26, 2020 letter to John Thomas Macaluso regarding benefit payment).

In that response, Taylor noted that "[g]enerally, the affirmative act rule"—that is, an exception to the requirement of strict compliance—"applies where the insurance company has initiated an interpleader proceeding." *Id*. at 7.  But Taylor also argued that a court may require only substantial compliance, even in the absence of an interpleader action, "where the intention of the policy holder is so clear." *Id.* at 7-8.  And she argued that Pichey's intention was clear in this case.  *Id*. at 9.

In support of her argument, Taylor cited *Schoenholz v. New York Life Ins. Co.*, 234 N.Y. 24, 136 N.E. 227 (1922)—a century-old non-interpleader case.  Docket Item 17 at 8.  *Schoenholz* recognized a narrow exception to strict compliance, *see* 234 N.Y. at 29-30, 136 N.E. at 228, but as this Court previously noted, Docket Item 24 at 8, it did not sweep as broadly as Taylor argued.  Instead, it limited the exception to situations where an individual "claim[s] to have been designated as a beneficiary [in exchange] for [] valuable consideration."  *Id.*  In such a case, strict compliance with the policy provisions will be excused provided that an "attempt at [] compliance [with the policy provisions] has been substantial and its full success [was] prevented by some cause not within the control of the person attempting to make the change."  *Id.*

In its motion to dismiss, Principal argues that *Schoenholz* applies only to interpleader cases or cases in which the insurer retains the funds at issue.  *See* Docket Item 27-2 at 27-30.  Because the funds already were distributed here, Principal says, *Schoenholz* does not apply.  *Id*.  Indeed, Principal asserts that every case that has applied *Schoenholz* involves either an interpleader or funds held by a trustee and that "[s]ince *Schoenholz* was decided 100 years ago in 1922, no exception to strict

7

compliance has been found by any New York court in any case other than in interpleader cases." *Id.* at 28-29.

Principal may well be correct. But even if *Schoenholz* applies to the situation here—even if strict compliance is not required and substantial compliance is good enough—the amended complaint still does not meet that standard.

In its decision on the defendants' first motions to dismiss, this Court noted that Taylor had not alleged that "she gave Pichey anything to be named beneficiary" and that the *Schoenholz* exception therefore did "not help her." Docket Item 24 at 8. In the second amended complaint, Taylor tries to correct that deficiency by alleging that Pichey named Taylor beneficiary "in exchange for [Taylor's] services during her cancer and end-of-life treatment." Docket Item 25 at ¶ 19.

Principal says that is not good enough. More specifically, Principal asserts that "no court has found that claimed end-of-life services constitute a valuable consideration adequate to meet the narrow exception." Docket Item 27-2 at 30. In fact, Principal suggests that providing such services in exchange for a dying person's assets raises questions about undue influence. *Id.* But even if Principal is correct—even if such an arrangement might not be ethical—on a motion to dismiss, this Court must accept the facts alleged in the complaint as true. And because Taylor now has alleged that she indeed provided something in exchange for being named beneficiary, she has met that element of the *Schoenholz* exception.[6]

---

[6] Principal argues that *Schoenholz* is no longer good law, Docket Item 27-2 at 29-30, and they may be correct. As Principal notes in its memorandum of law, at least one appellate court in New York has found that "the law has evolved" since *Schoenholz* and that strict compliance is required unless an insurer triggers substantial compliance by commencing an interpleader action. *See* Docket Item 27-2 at 29 (quoting *Lincoln Life*

But Taylor's claim still fails.  Under the doctrine of substantial compliance, a change of beneficiary made in exchange for consideration will be given effect if "the insured took 'an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts . . . accomplished all that it was in [her] actual power to do to change beneficiaries.'"  *William Penn Life*, 569 F. Supp. 2d at 365-66 (quoting *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, No. 05 Civ. 10194 (NRB), 2007 WL 4457771, at *18 (S.D.N.Y. Dec. 14, 2007)).  Intent alone is not enough.  *Id.*  The insured also must have "done all that was reasonably possible to do to show [her] intention" or made "every reasonable effort to comply with the policy requirements."  *McCarthy*, 92 N.Y.2d at 440, 704 N.E.2d at 560 (internal citations and quotation marks omitted).  And despite adding a general allegation about Pichey's capacity, the amended complaint still does not plausibly allege that Pichey did "all that was reasonably possible" to demonstrate her intention.

In her first amended complaint, Taylor alleged that Pichey's health was in "rapid decline" when she visited the Lockport KeyBank branch on November 4, 2019, Docket Item 10 at ¶ 15; that nine days later, Principal sent Pichey a letter rejecting her change-of-beneficiary form and giving her instructions about how to properly change the beneficiary, *id.* at ¶ 18; and that Pichey died a few weeks later, *id.* at ¶ 19.  In deciding the defendants' first motion to dismiss, this Court noted that those allegations were

---

*and Annuity Co. of New York v. Caswell*, 813 N.Y.S. 2d 385, 388 (1st Dep't 2006)).  Nevertheless, because this Court finds that Taylor has not met the requirements of substantial compliance, it need not and does not reach this issue.

9

insufficient to show why Pichey could visit KeyBank and try to change the beneficiary in early November but not do so later that month.  *See* Docket Item 24 at 9.

So in the second amended complaint, Taylor also alleges that "[b]y November 13, 2019" when Principal sent the letter rejecting the change of beneficiary form and explaining how to correctly change the beneficiary, "Pichey was incapable of comprehending the content of[,] or responding to[,] the letter."  *See* Docket Item 25 at ¶ 31.  And for that reason, Taylor alleges, Pichey was then "incapable of taking any action to change the beneficiary."  *Id.*  But that new allegation still is insufficient because in light of other allegations in the complaint, it simply is not plausible.

Indeed, the amended complaint's conclusory allegation about competency is directly belied by several other specific allegations that it explicitly makes.  For example, the amended complaint alleges that on November 4, 2019, after consulting with her physicians, Pichey decided to pursue a course of chemotherapy, which began on November 7 and continued through November 14.  Docket Item 25 at ¶¶ 26-28.  It alleges that "by November 15, 2019," after "consult[ing] with her physicians," Pichey "elected to forgo further chemotherapy."  *Id*. at ¶ 29.  And it alleges that Pichey went into hospice care on November 22 but five days later returned to her home, where she died on December 2.  *Id*. at ¶¶ 32-33.  So contrary to the allegations that Pichey was incapable of changing her beneficiary after November 13, 2019, *id* at ¶ 31—that she was "mentally enfeebled" and "either would not or could not engage with [Taylor]", *id.* at ¶ 29—Pichey was competent enough to decide to pursue chemotherapy, elect to stop that treatment, decide to leave her home to go into hospice care, and change her mind a few days later.  In light of those specific facts pleaded in the second amended

complaint, Taylor has not plausibly alleged that Pichey did everything in her power to effect the change in beneficiary that she intended.  *See McCarthy*, 92 N.Y.2d 436.

*John Hancock Mutual Life Insurance Co. v. McManus*, 247 A.D.2d 513, 513-14, 669 N.Y.S.2d 320, 321 (2d Dep't 1998), illustrates the point.  In that case, as here, the policy holder submitted a change-of-beneficiary form that the insurer said was incorrectly completed; in that case, as here, the insurer provided a new form, but the policy holder passed away about a month later without ever submitting the new form.  *Id.*  The court held that the change in beneficiary was not effective, reasoning that even if the policy holder's attempt to change the beneficiary demonstrated intent, she still could have submitted, but did not submit, the new form during the month before her death.  *Id.*

Similarly, Pichey could have submitted the form that Principal mailed to her.  Perhaps she changed her mind; perhaps she simply did not get around to it; perhaps her illness and infirmity prevented her from doing what she intended.  But the allegation in the second amended complaint that she was "incapable of comprehending the content of or responding to the letter . . . dated November 13, 2019, rendering her incapable of taking any action to change the beneficiary of the Annuity" is insufficient.  Docket Item 25 at ¶ 31.  It is both conclusory and incongruous with the other specific allegations that she was capable of consulting with her medical team and making decisions about her medical care.  And for that reason, it does not allege even substantial compliance

In short, the exceptions to strict compliance likely do not apply here, and even if they did, Taylor has not adequately alleged that the prerequisites of substantial compliance have been met. For that reason, Principal's motion to dismiss is granted.

### B. Necessary Party

Principal also argues that the second amended complaint fails to join Pichey's nephew, John Thomas Macaluso, as a necessary party and that it is entitled to dismissal for that reason as well. Docket Item 27-2 at 36-39. Macaluso had been the designated primary beneficiary of the annuity since July 2013,[7] Docket Item 27-1 at ¶ 17, and in February 2020, he submitted a Death Claim Form, *id*. at ¶ 37. Principal went to extraordinary lengths to ascertain whether Taylor intended to pursue legal action—including repeated attempts to communicate with several lawyers and freezing the annuity funds from June 24, 2020, to September 22, 2020—before distributing the funds to Macaluso. *Id*. at ¶¶ 38-50. But after Taylor did not file suit or do anything else to pursue her interests for several months, Principal distributed the funds to Macaluso on October 26, 2020. *Id*. at ¶ 51.

Under Federal Rule of Civil Procedure 12(b)(7), courts must dismiss an action for failure to join a party who is "necessary" as defined in Federal Rule of Civil Procedure 19(a).

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

---

[7] Initially, Macaluso's father, Pichey's brother, was named as the primary beneficiary, and Macaluso was named as the contingent beneficiary. Docket Item 27-1 at 23. According to Principal, after Macaluso's father died, Pichey executed the proper change-of-beneficiary form and designated Macaluso as the primary beneficiary. Docket Item 27-2 at 38.

      (A) in that person's absence, the court cannot accord complete relief among existing parties; or
      (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
          i. as a practical matter impair or impede the person's ability to protect the interest; or
          ii. leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Principal's 12(b)(7) motion to dismiss is premised on the theory that if there is an equitable remedy available, all parties with a claim to the annuity, including Macaluso, must be joined. But as noted above, this is not an interpleader action and Taylor does not seek equitable relief. So there is a question about whether Macaluso is truly "necessary" to resolve this case.

In any event, this Court need not and does not reach this issue because it grants Principal's motion to dismiss for the reasons stated above.

## II.    KEYBANK

KeyBank also has moved to dismiss the second amended complaint because it is not a party to the annuity contract. Docket Item 26. In fact, the second amended complaint does not allege any contract—express or implied—between Pichey and KeyBank; rather it alleges only that KeyBank acted as Principal's agent. Docket Item 25 at ¶ 14. Absent any allegation that there was an agreement between KeyBank and Pichey, Taylor's claim that KeyBank breached a contract with Pichey fails. *First Inv'rs Corp., v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (breach of contract claim under New York law requires: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages); *see also Matter of* Sud v. Sud, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1st Dep't 1995) (breach of contract

claim will be dismissed as being "too vague and indefinite," where the plaintiff fails to allege, in nonconclusory fashion, "the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated[.]"). And absent a contract between KeyBank and Pichey, Taylor's third-party beneficiary claim fails as well. *Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party.") Here, because there was no contract between Pichey and KeyBank, Taylor's claim to be a third-party beneficiary entitled to relief against KeyBank is both factually and legally impossible.

So even if KeyBank were not entitled to dismissal for the same reason that this Court dismisses the claim against Principal, it would be entitled to dismissal because Taylor has not alleged a contract to which KeyBank was a party.[8]

---

[8] The complaint alleges only breach of contract and third-party beneficiary claims. In fact, prior to this Court's decision on the first motions to dismiss, Taylor withdrew her negligence claims against both Principal and KeyBank. Docket Item 17 at 4.

## **CONCLUSION**

For the reasons stated above, Principal's motion to dismiss, Docket Item 27, and KeyBank's motion to dismiss, Docket Item 26, both are granted. The Clerk of the Court shall enter judgment in favor of the defendants and close this case.

SO ORDERED.

Dated:   February 14, 2023
           Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE